CITY OF ST. LOUIS v. HILL, *Appellant.*

Division Two, June 13, 1893.

1. **Constitution**: BOULEVARD LAW: BUILDING RESTRICTIONS. The act of the legislature of 1891 (Laws, p. 47), known as the "Boulevard Law," which provides that a city having a population of three hundred thousand inhabitants and more may establish a building line on a boulevard to which all structures thereon must conform, there being no provision therein for proceedings to condemn the land nor for notice to the owner, contravenes article 2, section 30, of the constitution which declares that no person shall be deprived of property without due process of law.

2. ——: ——: ——. Said act is also violative of the constitution, article 2, section 21, which provides that private property shall not be taken for public use without just compensation.

3. **Constitution**: CITY: CHANGE OF STREET GRADE: STATUTE. Section 1821, Revised Statutes, 1889, providing where a city changes the line or grade of any street or alley without the consent of the owner, or where compensation cannot be agreed upon and proceedings to condemn the land were not instituted before the commencement of the work, the owner may maintain an action at law against the city to recover the damages caused by the improvement, violates the constitution, article 2, section 21, which declares that private property shall not be taken for public use until compensation therefor is "paid to the owner or into court for the owner."

*Appeal from St. Louis Court of Criminal Correction.—* HON. J. R. CLAIBORNE, Judge.

REVERSED.

The defendant was arrested upon an information lodged against him in the first district police court of St. Louis, for violating ordinance 16450 of the plaintiff city, relating to "Forest Park boulevard," the sections of which ordinance material to the consideration of this case are as follows:

"Section 1. That certain public highway, known as 'Forest Park boulevard,' and extending from Grand avenue to King's highway, is established as a boulevard."

"Sec. 4. All houses or buildings hereafter to be erected on said Forest Park boulevard shall conform to uniform building lines, which building lines shall be forty feet distant from and parallel with the north and south lines of said Forest Park boulevard, respectively."

"Sec. 4a. Any person violating the provisions of the foregoing section by not conforming to said building lines, or any mechanic or builder erecting houses or buildings not in conformity with said lines, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined not less than five dollars, nor more than twenty-five dollars for each and every day that such house or building in course of erection is permitted to remain, until removed, and each and every day shall constitute a separate offense."

The record discloses that on the eleventh day of November, 1892, the defendant on premises on the north side of Forest Park boulevard, between Cabanne street and Vandeventer avenue, of which the defendant was then and there the owner in fee, which premises were within the district covered by said ordinance number 16450, in the city of St. Louis, did erect a certain dwelling house within the distance of forty feet, to-wit: within fifteen feet from the north line of said Forest Park boulevard, said house not conforming to the uniform building line of said Forest Park boulevard, as prescribed by said ordinance number 16450.

The defendant filed a written motion for discharge upon the ground that the said ordinance No. 16,450 is unconstitutional and void, in that it is contrary to and in violation of sections 20, 21 and 30 of article 2 of the constitution of the state of Missouri.

The St. Louis court of criminal correction, to which court the case had previously been appealed from said first district police court, overruled said motion, found the defendant guilty, and fined him $500 and costs. Hence this appeal.

The ordinance heretofore quoted is bottomed on an enactment of the general assembly of this state, the first section of which is the following:

"Section 1. All cities in Missouri having a population of three hundred thousand inhabitants or more, or which shall hereafter reach said population, are hereby authorized and empowered to establish by ordinance boulevards and provide for maintaining the same; and may regulate the traffic thereon, and may exclude heavy driving thereon, or any kind of vehicle therefrom, and may exclude the institution and maintenance of any business avocation on the property fronting on such boulevard and may establish a building line to which all buildings and structures thereon shall conform, and may convert existing streets into boulevards, and may levy a special tax on property fronting on said boulevards, to light, sweep and maintain the same, and the grass and trees thereon, or any part of said expenditures, and for the above purposes, or any of them, may lay out a district or districts in which said special tax shall be levied, and provide for the assessment of said special tax by assessing the same in favor of the city on the adjoining property fronting or bordering on the boulevards where such lighting, sweeping and maintenance is to be had, in the proportion that the linear feet of each lot fronting or bordering on the boulevard bears to the total number of linear feet of all property chargeable with the special tax aforesaid in the district so established, and may accept dedications of boulevards with conditions thereto attached which shall be binding and

conclusive: Provided, however, that no ordinance on the above subjects, or any of them, shall be valid unless recommended by the board of public improvements of the city enacting the same." Laws 1891, p. 47.

*Collins & Jamison* and *Rowell & Ferris* for appellant.

(1) The right of exclusive enjoyment of real estate by the owner in whatever manner he sees fit, provided he does not so use it as to injure the equal enjoyment by others of their property, or so as to endanger the lives or health of others, must be considered as axiomatic truth. (2) Section 21 of article 2 of the constitution provides that private property shall not be taken or damaged for public use without just compensation. No compensation is afforded by the ordinance which proposes to deprive this defendant of the legitimate use of his property. *Walter v. Warner*, 25 Mo. 277; Mills on Eminent Domain, section 22; *Provolt v. Railroad*, 57 Mo. 261; *St. Louis County v. Griswold*, 58 Mo. 199. (3) Section 30 of article 2 of the constitution provides that no person shall be deprived of life, liberty or property without due process of law. *Lowery v. Rainwater*, 70 Mo. 152; Tiedeman on Real Property, section 752; *River Rendering Co. v. Behr*, 77 Mo. 91; *Leslie v. City*, 47 Mo. 475; *Wynehamer v. People*, 13 N. Y. 378; 1 Blackstone Commentaries, 139; *People v. Otis*, 90 N. Y. 48; *Janesville v. Carpenter*, 46 Northwestern Reporter, 138; *Forster v. Scott*, 32 Northeastern Reporter, 976; *Steel Co. v. Bridgeport*, 60 Conn. 278; *Grand Rapids v. Powers*, 89 Mich. 94. (4) To prevent the owner from building upon any portion of his land he may desire, is a taking and a deprivation of property within the

true intent and meaning of the Bill of Rights. 4 American and English Encyclopedia of Law, p. 544; *Pumpelly v. Green Bay Co.*, 80 U. S. 166; Mills on Eminent Domain, section 30; *Janesville v. Carpenter*, 46 Northwestern Reporter, 128–132; *Eaton v. Railroad*, 51 N. W. 504 and cases cited; Lewis on Eminent Domain, sections 56 and 58; *Forster v. Scott*, 32 Northeastern Reporter 976; Cooley's Constitutional Limitations [6 Ed.], page 670; *Grand Rapids v. Powers*, 89 Mich. 94; *In re Chestnut Street*, 118 Pa. 593; *City v. Linneed*, 97 Pa. 242; *Kuhn v. Commonwealth*, 70 Mich. 537; *Commonwealth v. Bacon*, 13 Ky. 210; *Crockner v. N. Y.* 15 Reporter, 135. (5) The ordinance establishing Forest Park boulevard cannot be sustained by the right of the city or state to exercise police regulations. Mills on Eminent Domain, section 7; *Forster v. Scott*, 32 Northeastern Reporter, 976; Cooley on Constitutional Limitations, p. 704. (6) While the courts should sustain an act of the legislature as valid, if it can be sustained, it is the plain duty of the courts to declare the same invalid where they are in conflict with a constitutional provision. *Lowry v. Rainwater*, 70 Mo. 152. (7) Private property cannot be taken for merely ornamental purposes, even though compensation be made therefor. *Steel Co. v. Bridgeport*, 60 Conn.278; 2 Dillon Municipal Corporation [4 Ed.], 599. (8) Whether the restriction imposed by the ordinance be considered as a "taking" of the defendant's property or merely a damaging thereof, in either event it is in violation of the constitution, because the compensation required must precede the taking or damaging thereof. *McElroy v. Kansas City*, 21 Federal Reporter, 257.

*W. C. Marshall* for respondent.

(1) There is no taking of private property under the law of 1891, and the city ordinance. The title to

St. Louis v. Hill.

the property and the right to use it is still in the defendant. Neither the city nor the public have any right to use any portion thereof. Any person attempting to enter upon or use any portion of the forty feet embraced in the building line would be a trespasser. The title and the use and the possession and the enjoyment of possession being still in the defendant, it cannot be said that there has been "a taking" within the meaning of section 21 of our constitution. Dillon on Municipal Corporations, secs. 487, 587a. (2) Consequential damages do not constitute a taking of property, and are, therefore, to be compensated in special proceedings. *Ib.* sec. 995. See also *Werth v. Springfield*, 78 Mo. 110; *Becker v. City*, 94 Mo. 379. (3) Boulevards are not only a necessity in modern times and in our progressive age, but are beneficial to owners of property abutting thereon. (4) If what has already been said is true, then section 30 of article 2 has no bearing on this proposition, for whatever beneficial enjoyment the owner is deprived of by reason of the boulevard and its building line will be compensated in a proper and legal manner by due process of law. The only contention that could be made under this head is as to the time when the compensation should be allowed, and as to when the party damaged should be entitled to process of law.

SHERWOOD, J.—As already disclosed by the record, the constitutionality of what is commonly known as the "Boulevard Law," is called in question by this appeal.

The provisions of the organic law cited by defendant as pertinent to this controversy are these:

"Sec. 21. That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained

by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested."

"Sec. 30. That no person shall be deprived of life, liberty or property without due process of law." Art. 2, Constitution, 1875.

It is urged on behalf of plaintiff that there has been no "*taking*" of private property under this law and ordinance because the "*title*" to the property and the right to use the same are still in the defendant. This contention brings into prominence the true import of the word "*property*."

The general result of various definitions of the term is that it is the exclusive right of any person to freely use, enjoy and dispose of any determinate object whether real or personal. 1 Blackstone's Commentaries, 138; 2 Austin's Jurisprudence, 817, 818; 19 American and English Encyclopedia of Law, 284, and cases cited; Lewis on Eminent Domain, secs. 57, 58, 59; *Eaton v. Railroad*, 51 N. H. 504; *Thompson v. Improvement Co.*, 54 N. H. 545; *Wynehamer v. Poeple*, 13 N. Y. 378. Sometimes the term is applied to the thing itself, as to a horse or a tract of land; these things, however, though the *subjects* of property are, when coupled with possession, but the *indicia*, the visible manifestations of invisible rights, "the evidence of things not seen."

Property, then, in a determinate object, is composed of certain constituent elements, to-wit: The unrestricted right of *use, enjoyment and disposal*, of that object. It follows from this premise that anything which destroys or subverts any of the essential elements aforesaid is a taking or destruction *pro tanto* of *property*,

though the possession and power of disposal of the land remain undisturbed, and though there be no actual or physical invasion of the *locus in quo.* Cooley's Constitutional Limitations [6 Ed.], 670; *Wynehamer v. People,* 13 N. Y. *loc. cit.* 433, per SELDEN, J.; *People v. Otis,* 90 N. Y. *loc. cit.* 52, per ANDREWS, C. J.

The *use* of a given object is the most essential and beneficial quality or attribute of property; without it all other elements which go to make up property, would be of no effect. If the city were allowed to deprive the defendant of the use of his entire lot, it would leave in his hands but a *barren and barmecidal* title; and what is true of property rights as an *integer* is true of each fractional portion.

If plaintiff's theory be correct, then the city could pass and enforce an ordinance, which would deprive defendant of the use of his *entire lot,* and still there would be no "taking" within the terms of section 21, article 2, of the constitution, and consequently, no right to compensation. The statement of such a position is sufficient to accomplish its utter repudiation.

The day before the ordinance went into operation, defendant had the unquestionable right to build at will on his lot; the day afterwards, he was as effectually prevented from building on the forty-feet strip, except under peril of punishment, as if the city had built a wall around it, and this too without any form of notice, any species of judicial inquiry, or any tender of compensation. If this is not a *"taking"* by *mere arbitrary edict,* it is difficult to express in words the meaning which should characterize the act of the city.

A case has arisen in Pennsylvania strongly resemblant in some of its facts to the case at bar. There an act of assembly provided that whenever an owner of property on Chestnut street should rebuild,

that the building then to be erected, should be set back five feet in the rear of the old line, thus widening the sidewalk five feet. The owner in that case contracted with a builder to tear down the old building and rebuild a new one on her lot. On application for a permit to rebuild, the building inspectors and surveyors gave the new line as established by the law, and the city solicitor notified the owner that the front wall of the new building must be set back to the new line. The owner conformed to the law and built her building accordingly. She then claimed compensation for the strip of ground, when she was met with the assertion that having voluntarily torn down her old front wall and rebuilt according to the new line, that the injury of which she complained was due to her own action, and therefore she could not recover; but the court answered; *"By force of law, the instant the old building was torn down the city took part of the land for public use, and is liable to make compensation to the owner, the same as if it had been taken in any other mode."* *City v. Linnard*, 97 Pa. St. 242.

This case was subsequently followed in *In re Chestnut St.* 118 Pa. St. 593, where it was again held that in such circumstances as aforesaid, there was an appropriation by the city of the strip of ground to public use. In those cases it will be noted that there was a provision for compensation; here there is none. Other adjudicated cases and authorities have been cited on behalf of defendant, tending to the conclusion heretofore stated.

The premises considered, we hold that the "Boulevard Law" is unconstitutional because it violates section 30 of article 2, of the constitution in that it makes no provision for any proceeding in a court of law for condemning property, nor for notice to the owner, and therefore deprives any citizen interested along the given route, of his property without due

process of law. Nor does the ordinance in question make any such provision. *Lowry v. Rainwater*, 70 Mo. 152; *Rendering Co. v. Behr*, 77 Mo. 91, and cases cited; Elliott on Roads and Streets, 150; *Grand Rapids v. Powers*, 89 Mich. *loc. cit.* 103, 104; *Janesville v. Carpenter*, 77 Wis. 288.

The "Boulevard Law" is also unconstitutional in that it makes no provision for compensation of those whose property is taken; nor is any such provision made in the ordinance by virtue of which defendant was arrested.

Section 21, Article 2, of our constitution declares that private property shall not be taken or damaged for use without just compensation. *Walther v. Warner*, 25 Mo. 277; *Provolt v. Railroad*, 57 Mo. 261; *Evans v. Railroad*, 64 Mo. 453.

It has been urged by counsel for the plaintiff city, that in any event an owner of property along the boulevard has his remedy by action against the city by virtue of section 1821, Revised Statutes 1889; which section is as follows:

"In all cases where the city authorities have graded or re-graded or changed the grades or lines of any street or alley, or may hereafter grade or change the grade or line of any street or alley, without the consent of the owner, or where the compensation cannot be agreed upon, and do not, before the commencement of the work, institute proceedings, or have not instituted proceedings, to have the damages ascertained and assessed, as provided in the six preceding sections, the owner shall be entitled to an action at law against the city, town or village to ascertain and recover the amount of damages caused by such improvement."

It will be observed that this section is not in conformity with section 21, of article 2, of the constitution, in that it allows property of the citizen to be taken

before the compensation is "paid to the owner, or into court for the owner."

Besides, the statutory section seems to be intended to apply only to cases where some *actual improvement* has been or shall be made, prior to action brought by the owner.

For reasons aforesaid, we reverse the judgment, and as it is apparent that the city has no standing in court, we will not remand the cause. All concur.